IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                               No. 19-CR-1304-JB

Jesus Armando Mixtega-Villegas,

       Defendant.

## MOTION TO SUPPRESS EVIDENCE OBTAINED AFTER AN ILLEGAL IMPOUNDING, INVENTORY AND SEARCH OF MR. MIXTEGA-VILLEGAS VEHICLE AND MOTION TO COMPEL DISCLOSURE OF DISCOVERY AND SUPPORTING MEMORANDUM

Jesus Armando Mixtega-Villegas, by and through his attorney, Sylvia Baiz, Assistant Federal Public Defender, and pursuant to the Fourth Amendment of the United States Constitution, applicable federal case law and Federal Rule of Crim. Pro. 16, respectfully requests the suppression of certain evidence from being used against him as it was the fruit of an illegal search. Moreover, Mr. Mixtega-Villegas requests a court order to compel further discovery in this case.

Mr. Mixtega requests a hearing at which he will demonstrate that the arresting police officer violated his rights under the fourth Amendment by impounding and searching the vehicle he drive on the night of his arrest.

## FACTUAL BACKGROUND

On March 2, 2019, Albuquerque police officer McCarson arrested Mr. Mixtega-Villegas for suspicion of Driving While Intoxicated (DWI). In a police report, the officer indicated he witnessed the pick-up truck Mr. Mixtega was driving cross into other lanes; to his right two times and to his left one time. Thus, he turned on his emergency lights and stopped the truck on Mountain Road west of Eubank. Officer McCarson asked Mr. Mixtega for his driver's license, registration and insurance. According to his police report, Mr. Mixtega provided a Mexican ID, registration and said he could find the insurance information. Officer McCarson asked Mr. Mixtega to get off the vehicle and guided him to a location a few feet away in a private parking lot to perform some sobriety tests. Mr. Mixtega did not understand some of the officer's instructions and he apparently failed one or both of the sobriety tests. Officer McCarson then handcuffed Mr. Mixtega and placed him in the back seat of the police vehicle. The officer ordered a tow truck.

Officer McCarson opened the console in Mr. Mixtega's vehicle and reportedly found a firearm and a quart sized plastic bag that contained meth. A Tow-In form revealed no other items were noted as being in Mr. Mixtega's vehicle

and there was no evidence indicating the vehicle would be retained as evidence. See exhibit A, tow-in form.

## Argument

A.  **The Warrantless Impoundment And The Purported Inventory Search Of Mr. Mixtega's Vehicle Were Unconstitutional**.

    1.    **Legal Standards**

An officer's impoundment of a vehicle legally parked on a public street may fall within a narrow exception to the Fourth Amendment's warrant requirement, but the government bears the burden of demonstrating that the impoundment still is constitutional. *United States v. Sanders*, 796 F.3d 1241, 1243-44 (10th Cir. 2015). An officer's impoundment is suspect if the government does not prove it was done using standardized criteria. *Colorado v. Bertine*, 479 U.S. 367, 375 (1987); *Sanders*, 796 F.3d at 1242, 1248-50. Additionally, an impoundment becomes unreasonable if the government cannot show that it was done "[i]n the interests of public safety" and to further "community caretaking functions." *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976); *Sanders*, 796 F.3d at 1242-43, 1248-50. Even when lawfully impounded, an officer may conduct a limited inventory search of the vehicle only if the search conforms to standardized criteria. *Opperman*, 428 U.S. at 375-76. Here, the officer cannot show he

lawfully impounded the vehicle Mr. Mixtega was driving or that his contraband-focused search of the car was within the scope of a lawful inventory search. The Court should suppress the evidentiary fruits of the search as well as any contraband found on Mr. Mixtega in a subsequent arrest by Federal officials after his release by the state.

> **2. Since the officers did not follow standardized impoundment criteria and cannot provide a reasonable and credible community caretaking rationale for impounding the vehicle, *Sanders* dictates the evidence he seized must be suppressed.**

Mr. Mixtega-Villegas asks this Court to decide whether it was lawful for APD officer McCarson to impound the car when (a) it was legally parked in or near a private parking lot and; (b) the officer did not follow City of Albuquerque impoundment rules. The Tenth Circuit recently addressed these questions in *Sanders*. It ruled that the "impoundment of a vehicle . . . that is neither obstructing traffic nor creating an imminent threat to public safety is constitutional only if justified by both a standardized policy and a reasonable, non-pretextual community caretaking rationale." 796 F.3d at 1243. Mr. Mixtega-Villegas asks the Court to adopt the *Sanders* analysis and holding and grant his motion to suppress the evidentiary fruits of unlawful police conduct.

In *Sanders*, the Court explained that its decision was consistent with *Bertine*. There, the Supreme Court ruled that the Fourth Amendment requires that standardized criteria regulate the circumstances in which a car may be impounded. Accordingly, *Sanders* affirmed the centrality of standardized criteria in constitutional impoundments. This rule's purpose is to "ensure[] that police discretion to impound vehicles is cabined rather than uncontrolled." *Id*. at 1249. Therefore, when an officer fails to follow his city's relevant traffic code, unless there are imminent public safety concerns, it is unlikely the impoundment will be found reasonable and constitutional. *See id*. ("*Bertine* makes the existence of standardized criteria the touchstone of the inquiry into whether an impoundment is lawful.").

An officer is prohibited by Albuquerque traffic code § 8-5-2-2 from removing or relocating a car from any street. The code lists 15 exceptions to this rule. § 8-5-2-4 (A)(1-15). One exception permits an officer to impound the car if the person in control of the car is arrested. § 8-5-2-4 (A)(7). However, the officer may do so only if the person does not have someone that can take the keys or move the car **and** the car is obstructing the normal movement of traffic or is in such a condition as to create a hazard to other traffic. In other words, if the car is not obstructing traffic or creating a hazard it can stay where it is even if someone

5

else is not available to take the keys or move the car. *See* § 8-5-2-4 (A) (1-5, 8-15) (describing circumstances where a car would be obstructing or creating a hazard it can stay where it is even if someone else is not available to take the keys or move the car. *See* § 8-5-2-4 (A) (1-5, 8-15) (describing circumstances where a car would be obstructing or creating a hazard to other traffic, none of which are applicable here). The code implies that impoundment is almost never required when it is more practical for the officer or the person responsible for the car to move it. § 8-5-2-4 (B).

Here the officer did not follow the Albuquerque traffic code. While Mr. Mixtega sat in the back seat of the police vehicle, he was apparently never asked if the owner of the vehicle or someone else could retrieve it. Nevertheless, the car could have been left where it was: it was not obstructing nor creating a hazard for other traffic. It did not matter if Mr. Mixtega could have called someone to take the keys or the car. The car was legally parked on a public street and violated no city ordinance requiring towing and its removal. The officer could have secured it and left it there. Put simply, the attendant conditions did not require the officers to impound the car. This alone is enough for the Court to find that the impoundment was unreasonable as a matter of law. *See Sanders*, 796 F.3d at 1249 ("police discretion to impound a vehicle is constitutional only 'so long as

that discretion is exercised according to standard criteria.'" (quoting *Bertine*, 479 U.S. at 375)).

Standardized criteria's role is to act as a bulwark against unfettered police discretion in impound decisions. The seizure here fails the first *Sanders* test because the officers' discretion was not bound by any standardized policy; it was "uncontrolled." The circumstances confronting the officer did not satisfy any of Albuquerque's criteria for impounding vehicles. *Sanders*, 796 F.3d at 1249-50; *see also United States v. Ibarra*, 955 F.3d 1405, 1409-10 (10th Cir. 1992) (impoundment unconstitutional because officer's decision did not meet any of the criteria for impoundment under Wyoming law).

In addition, the officer cannot show he had a legitimate community caretaking reason to impound the car. In *Opperman*, the Supreme Court ruled a car that is obstructing or impeding traffic on public property can be impounded without following standardized procedures. 428 U.S. at 369. Put differently, sometimes circumstances require police to impound a car immediately to keep traffic flowing or to protect the public from immediate harm. *Id*. at 368-69. Public safety was not an issue here. **The car was parked on a public street/private parking lot in a residential neighborhood.** *See United States v. Caseres*, 533 F.3d 1064, 1075 (9th Cir. 2008) (car did not create a hazard to others and was not a

target for vandalism or theft when it was legally parked two houses down from accused's residence). Since the car was not a danger to, or in danger from, anyone, the officer could not have had a genuine and compelling public safety concern.

In *Sanders*, the Court found the government had not shown that the officer was safeguarding the immediate community by impounding the car. 796 F.3d at 1249-51. In reaching its decision, the Court listed numerous factors that shape an objective inquiry into whether impoundment is supported by a reasonable and legitimate public safety purpose. *Id.* A review of those factors illustrates that impounding the vehicle here, was not justified by any community caretaking purpose.

> *1) Was the car on non-public or private property?* The car was legally parked in a private parking lot of a commercial center or on an adjacent public street. It was not blocking traffic. There was no evidence that it was a hazard to other drivers or pedestrians.
>
> *2) Was there an alternative to impounding the car?* Albuquerque traffic code did not require the car to be impounded. Instead the code directs officers to leave a properly parked car where it is. Still, Mr. Mixtega could have called a friend to retrieve the keys or the car itself. The car could have

stayed where it was until someone else came to get it. Or the officer simply could have asked Mr. Mixtega if he was agreeable to leaving the car right where it was.

3) *Was the vehicle implicated in the crime for which the person was arrested?* Apparently the officer suspected Mr. Mixtega of driving while intoxicated and had already arrested him. There is no evidence the car was a material object of the arrest. Contrary evidence of this is the fact that while having the vehicle towed, the officer placed no hold or other condition on its release and it was not being held as evidence in the case. See exhibit A.

4. *Did the car's owner and/or driver consent to the impoundment*? There is no evidence that police consulted with Mr. Mixtega about what should be done with the vehicle nor did he consent to the impoundment.

After considering all these factors, the Court in *Sanders* concluded the objective facts weighed against the officer's decision to impound the car. 796 F.3d 1250-51. Here too, the inquiry and the objective facts must weigh the same way. Absent an overriding public safety concern, the officers' decision to arbitrarily impound the car was unreasonable.

Finally, there was no issue about the car being left at the private parking lot or at the curb near the parking lot. There was no issue that the car was in an

unsafe neighborhood. In *Sanders*, the Court warned that an officer's concern over vandalism may be a pretext to search. 796 F.3d at 1251 n. 2. By citing with approval the Seventh Circuit's opinion in *United States v. Duguay*, 93 F.3d 346 (7th Cir.1996), the Court implicitly adopted that case's suggestion that legitimate community caretaking does not include preventing possible vandalism. 796 F.3d at 1251 n. 2. Broadly speaking, police do not owe a duty to the general public to remove vulnerable vehicles from unsafe neighborhoods. The *Duguay* court said an officer voicing such an ambiguous concern makes a new obligation for the police where none existed before. *Sanders*, 796 F.3d at 1247 (citing *Duguay*, 93 F.3d at 352). **Here, the officer's duty to impound a vehicle is controlled by Albuquerque's traffic code. That code lists fifteen exceptions to the general ban on impounding vehicles "high-crime areas" or concern the car may be a property crime target are not among them.** As the Court in Sanders held, "…impoundment of a vehicle located on public property that is neither obstructing traffic nor creating an imminent threat to public safety is constitutional only if justified by both a standardized policy and a reasonable, non-pretextual community-caretaking rationale. *Id.*

**B. Even If The Impoundment Was Justified, The Officer Cannot Demonstrate He Was Permitted To Search The Car For Contraband As Part Of A Routine Inventory Search And That Doing So Served Legitimate Inventory Search Goals**.

If the Court concludes the car was lawfully impounded, it should still suppress the fruits of the subsequent search because the officers exceeded the permissible scope of an inventory search when he rummaged through the consol of the vehicle looking for evidence of a crime. As explained below, there are two distinct bases for suppression: (1) the officers cannot show that Albuquerque police policy authorized their search; and (2) regardless of policy, the officers cannot prove that their actions served legitimate inventory search goals.

When a vehicle is lawfully impounded, a search may be required to take inventory of the owner's property and protect it while it remains in police custody. An inventory search can also protect the police from potential danger and from disputes or claims over lost or stolen property. *Opperman*, 428 U.S. at 369-76. But such searches must be conducted "according to standardized criteria and on the basis of something other than suspicion of evidence of criminal activity." *Bertine*, 479 U.S. at 375. The demand for standardized criteria or established procedure to regulate inventory searches is because the search "must not be a ruse for a general rummaging in order to discover incriminating evidence." *Florida v.*

*Wells*, 495 U.S. 1, 4 (1990). An officer may be given some latitude but not so much that a search to inventory property becomes "'a purposeful and general means of discovering evidence of crime[.]'" *Id*. Therefore, "[t]he policy or practice governing inventory searches should be designed to produce an inventory." *Id*. at 4. Moreover, the scope of the inventory search cannot exceed what is necessary to serve the interests underlying the exception to the warrant requirement; namely, to protect the owner's property and to protect the police from accusations of stolen, lost, or damaged property. *Caseres*, 533 F.3d at 1074 (*citing Opperman*, 428 U.S. 372-74).

In interpreting the Fourth Amendment, courts have favored a focus on reasonableness. *See Riley v. California*, 573 U.S. ___, ___, 134 S.Ct. 2473, 2482 (2014) ("[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'"). Or simply put, do an officer's actions reasonably satisfy the purpose of the search?

Here, the search's ostensible purpose was to inventory property. But the officer never completed the inventory list of items found in the vehicle Mr. Mixtega was driving. These actions show he was not concerned about that. No items were recorded on the inventory form. The purpose of the inventory search

was not "to record defendant's belongings to protect police from potential liability." *United States v. Edwards*, 632 F.3d 633, 644 (10th Cir. 2001). Instead the search was "conducted for investigatory, rather than administrative, purposes." *Id*. When, like here, officers search a car to discover evidence of a crime, they are not serving the primary goal of a legitimate inventory search. *See United States v. Lugo*, 978 F.2d 631, 637 (10th Cir. 1992) ("searching behind the door panel of a vehicle does not qualify as 'standard police procedure,' and does not serve the purpose of 'protecting the car and its contents' under any normal construction of those terms"). Therefore, the search was not reasonable or done in good faith and the evidence should be suppressed.

### C. Any Evidence Law Enforcement Officers Seized From Mr. Mixtega-Villegas, Including Statements, Must Be Suppressed As Fruits Of An Illegal Impoundment And Search Of The Car.

Whether evidence obtained following a Fourth Amendment violation must be suppressed depends on if it "has been come at by exploitation of [the] illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (citing Maguire, *Evidence of Guilt*, 221 (1959)). Here, all the evidence seized by the officers from the illegal impoundment and improper inventory search should be suppressed.

Consequently, any firearm or drugs must be suppressed as products of the officers' unreasonable conduct.

For these reasons, Mr. Mixtega-Villegas respectfully requests this court to exclude all evidence obtained from the vehicle Mr. Mixtega was driving.

Opposing counsel, Assistant United States Kristopher Houghton was informed of the instant motions and opposes them.

## II.

## **MOTION TO COMPEL DISCOVERY AND PRESERVE EVIDENCE**

Defendant moves for the production by the government of the following discovery and for the preservation of evidence. This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any government agency. See generally Kyles v. Whitley, 514 U.S. 419 (1995); United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).

1) Notes and Audio or Video Recordings. The defense specifically requests police car and lapel camera video, in their entirety, involved in Mr. Mixtega's arrest which police reports refer to, but which have not been disclosed. The defense also specifically requests that all arrest reports, notes and dispatch or

audio and video recordings that relate to the circumstances surrounding Mr. Mixtega's arrest or any questioning, if such reports have not already been produced <u>in their entirety</u>, be turned over. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of the defendant or any other discoverable material is contained. Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A) and (B) and <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). <u>See</u> <u>also</u> <u>Loux v. United States</u>, 389 F.2d 911 (9th Cir. 1968). Arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to the

defendant are available under Fed. R. Crim. P. 16(a)(1)(B), Fed. R. Crim. P. 26.2, and Fed. R. Crim. P. 12(h). Preservation of rough notes is requested, whether or not the government deems them discoverable.

    2) *Brady* <u>Material</u>. Defendant requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case. Under <u>Brady</u>, impeachment as well as exculpatory evidence falls within the definition of

evidence favorable to the accused. United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976).

3) Evidence Seized. Evidence seized as a result of any search, either warrantless or with a warrant, is discoverable under Fed. R. Crim. P. 16(a)(1)(E).

4) *Giglio* Information. Pursuant to Giglio v. United States, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, expressed or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information which could arguably be used for the impeachment of any government witnesses.

5) Informants and Cooperating Witnesses. The defense requests disclosure of the names and addresses of any informants or cooperating witnesses used or to be used in this case. The government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense. Roviaro v. United States, 353 U.S. 53, 61-62 (1957). The defense also requests disclosure of any information indicating bias on the part of any informant or cooperating witness. Giglio v. United States, 405 U.S. 150 (1972). Such information would include what, if

any, inducements, favors, payments, or threats were made to the witness to secure cooperation with the authorities.

## CONCLUSION

For the foregoing reasons, Mr. Mixtega respectfully requests that the Court conduct a hearing to grant his motions to suppress evidence and to compel discovery.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489

*s/ Filed electronically 7/5/2019*
Sylvia Baiz, AFPD
Attorney for Defendant Mixtega