UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                           No. 19-CR-1304-DHU

JESUS ARMANDO MIXTEGA-VILLEGAS,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## ON MOTION TO SUPPRESS

This matter is before the Court on Defendant's Amended Motion to Suppress Evidence Obtained After an Illegal Impounding, Inventory and Search of Mr. Mixtega-Villegas Vehicle and Motion to Compel Disclosure of Discovery and Supporting Memorandum.[1] *See* Doc. 32. The Government filed its Response to Defendant's Amended Motion to Suppress ("Response"), *see* Doc. 34, and exhibits in support of its Response. *See* Doc. 109. The Court held a hearing on the Motion on December 12, 2022. *See* Doc. 111. Having considered the Motion, briefs, record evidence, arguments, relevant law, and being otherwise fully informed, the Court concludes that the Motion is **DENIED**.

### FACTUAL FINDINGS

The Court makes the following findings of fact, as supported by the record, in accordance with Rule 12(d) of the Federal Rules of Criminal Procedure.

At approximately 1:48 a.m. on March 2, 2019, Albuquerque Police Department ("APD") Officer Timothy McCarson was on patrol in Albuquerque, New Mexico. *See* Motion Hearing

---

[1] The Court already addressed the motion to compel portion of Document 32. *See* Doc. 46 (Order Granting Stipulated Motion to Vacate October 21, 2019 Hearing and to Deny as Moot the Motion to Compel Discovery). As a result, the Court need only address the motion to suppress portion of Document 32 ("Motion").

1

Transcript ("Mot. Hr'g Tr.") at 14:12-19.[2]  On that date, Officer McCarson observed a white pickup truck traveling southbound on Eubank in front of the officer's vehicle. *See id.* at 15:13-15. Eubank has three lanes. *See id.* at 15:16. The officer noticed that the truck drifted into the left-hand lane by about the width of a truck tire, which caused a car in the left-hand lane to brake and slow down. *See id.* at 15:17-19. Officer McCarson continued to observe the pickup truck and noticed that it then drifted into the right-hand lane two times and then back into the left-hand lane. *See id.* at 15:20-23. Because of these observations, Officer McCarson activated his emergency equipment and conducted a traffic stop. *See id.* at 15:21-23; *see also* DWI Offense Report, Government's Exhibit ("Pl.'s Ex.") 3 at 1. Defendant was the driver of the truck. *See* Mot. Hr'g Tr. at 14:12-15.

The stop occurred on Mountain Road, west of Eubank. *See* Mot. Hr'g Tr. at 16:1; *see also* Pl.'s Ex. 3 at 2. Defendant parked the truck on the right side of Mountain, a public roadway. *See* Pl.'s Ex. 3 at 2; *see also* Picture of Truck, Pl.'s Ex. 4; *see also* Mot. Hr'g Tr. at 22:6-17. The back half of the truck blocked a private driveway to a parking lot. *See* Pl.'s Ex. 4; *see also* Mot. Hr'g Tr. at 22:12-14, 21-22.

After Defendant stopped, Officer McCarson approached the truck and made contact with Defendant. *See* Mot. Hr'g Tr. at 16:2-3. Officer McCarson asked Defendant for his driver's license, registration, and proof of insurance. *See id.* at 16:4-6. Defendant provided a Mexican ID and registration for the vehicle. *See id.* at 16:8-10. Defendant was not listed on the vehicle registration. *See id.* at 16:11-20; *see also* Vehicle Registration, Pl's Ex. 1, Doc. 109 at 1 (listing Nectali Fuentes-Camarillo as the registered owner).

---

[2] This Memorandum Opinion and Order cites to the court reporter's unofficial transcript. All page citations are subject to change on the official, edited version of the transcript.

Officer McCarson smelled a moderate odor of alcoholic beverage coming from Defendant's breath, so the officer asked Defendant if he had consumed any alcohol. *See* Mot. Hr'g Tr. at 16:23-17:1. Defendant said he had three to four beers, with the last one consumed about 30 to 40 minutes prior to the stop. *See id.* at 17:2-6. Officer McCarson also observed that Defendant's eyes were bloodshot. *See id.* at 17:7-9. The officer asked Defendant to exit the vehicle so that he could conduct field sobriety tests. *See id.* at 19:9-12. After conducting the field sobriety tests, Officer McCarson determined that Defendant was under the influence of intoxicating liquor or drugs and arrested Defendant as a result. *See id.* at 21:13-21.

Next, the officer placed Defendant in the back seat of the police vehicle and began working on paperwork while waiting for a tow truck. *See id.* at 21:22-22:2. Officer McCarson decided to tow the vehicle because of his understanding that APD policy dictates that a vehicle should be towed when the driver is arrested for a DWI offense. *See id.* at 22:3-5. Officer McCarson was concerned about where Defendant's vehicle was parked because if a vehicle attempted to exit the parking lot via the private driveway, that would cause a traffic obstruction because the vehicle would have to move toward the center of the driveway. *See id.* at 23:24-24:5. If a vehicle was attempting to enter the parking lot from Mountain Road at the same time, that would cause a traffic obstruction. *See id.* at 24:5-8. This obstruction would potentially impact the flow of traffic on Eubank if multiple vehicles were involved. *See id.* at 24:9-11.

When the tow truck arrived, Defendant asked Officer McCarson to get Defendant's cell phone out of the truck. *See id.* at 27:9-10. Officer McCarson opened the truck door and conducted an inventory search. *See id.* at 26:21-22, 27:4-10. During the search, the officer found an open container of beer on the back right floorboard, a cellphone in the cupholder, and in the center console, nearly $4,000 in cash, a black 9mm handgun, and a quart-size bag of a substance later

3

identified as methamphetamine. *See id.* at 26:23-27:3. Officer McCarson testified that he does not believe that Defendant said anything about who owned the items found in the vehicle. *See id.* at 27:14-16.

## LEGAL ANALYSIS

Defendant argues the impoundment and inventory search in this case were unconstitutional and as a result, requests that the Court suppress the "evidentiary fruits of the search as well as any contraband found on Mr. Mixtega-Villegas in a subsequent arrest by Federal officials after his release by the state."[3] Doc. 32 at 4.

The Government responds that first, Defendant must satisfy his burden to establish he has standing to challenge the impoundment and inventory of the truck. *See* Doc. 34 at 8-9. Second, the Government argues the impoundment was lawful because police have authority to seize vehicles that impede traffic or threaten public safety and convenience under *South Dakota v. Opperman*, 428 U.S. 364 (1976) or, alternatively, because the impoundment was guided by both standardized criteria and a legitimate community-caretaking rationale under *Colorado v. Bertine*, 479 U.S. 367 (1987). *See* Doc. 34 at 10-12.

### Standing

The Government argues that Defendant's "status as the driver and sole occupant of the Toyota [truck] does not grant him standing to challenge the legality of the actions undertaken by Officer McCarson" because "to have standing to challenge the impoundment and inventory search of the Toyota, Mixtega-Villegas has the burden of establishing that he was in lawful possession of it." Doc. 34 at 8-9. This is because "[w]hile neither ownership nor lawful possession are

---

[3] It appears Defendant is referring to contraband that was found subsequent to the March 2, 2019 arrest, as described by the Government in its brief. *See* Doc. 34 at 6-7. Because the Court denies Defendant's Motion, it need not recount the details of the subsequent discovery of the additional contraband.

determinative, they are often dispositive factors; a defendant seeking to establish standing bears the burden of demonstrating 'that he gained possession from the owner or someone with the authority to grant possession.'" *United States v. Kelly*, No. CR 10-2057 JB, 2010 WL 5173599, at *6 (D.N.M. Nov. 17, 2010) (Browning, J.) (citing *United States v. Arango*, 912 F.2d 441, 445-46 (10th Cir. 1990)). *See* Doc. 34 at 9. The Government asks the Court to analyze three considerations set forth in *United States v. Parada*, 577 F.3d 1275, 1280 (10th Cir. 2009):

> (1) whether the defendant asserted ownership over the items seized from the vehicle;
> (2) whether the defendant testified to his expectation of privacy at the suppression hearing; and
> (3) whether the defendant presented any testimony at the suppression hearing that he had a legitimate possessory interest in the vehicle.

*See* Doc. 34 at 9; *see also* Mot. Hr'g Tr. at 38:12-22. The Government acknowledges these "criteria" are "important though not determinative." *See* Doc. 34 at 9. The Government argues "Defendant did not assert ownership over the items in the truck," *id.*, he did not testify as to his expectation of privacy," Mot. Hr'g Tr. at 38:17-19, and that "just merely driving a vehicle does not give somebody a legitimate possessory interest," *id.* at 38:20-22, so there is "no evidence that Mixtega-Villegas was in lawful possession of the vehicle." Doc. 34 at 9.

Defendant did not address his standing to challenge the search in his briefing, but his counsel argued at the hearing that Defendant has satisfied his burden because all of the information before the Court indicates Defendant was in lawful possession of the vehicle. *See* Mot. Hr'g Tr. at 50:20-21. Defendant argues there is no evidence the vehicle was stolen, manipulated to be driven without a key or that the steering column appeared unusual. *See id.* at 50:18-23. Defendant apparently had the keys to the vehicle, was driving the vehicle, and was in possession of the vehicle. *See id.* Without citation to authority, Defendant argues that the fact that the vehicle was not registered in his name is not determinative because there are circumstances where people other

5

than the registered owner driver drive a vehicle, such as a child driving a parent's vehicle or a husband driving a wife's vehicle.  *See id.* at 51:12-23.  Defendant argues that, in combination, these facts lead to the conclusion that Defendant had a lawful privacy interest in the vehicle.  *See id.* at 51:16-19.

"It is fundamental law that a person desiring to have evidence suppressed must first show he has standing to object to the search." *United States v. Deninno*, 29 F.3d 572, 576 (10th Cir. 1994).  The Tenth Circuit considers "two factors in determining whether a defendant has standing to assert a violation of his Fourth Amendment rights: 'whether the defendant manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognize that expectation as objectively reasonable.'" *Parada*, 577 F.3d at 1280 (quoting *United States v. Allen*, 235 F.3d 482, 489 (10th Cir. 2000)).  A defendant moving to suppress evidence has the burden to show "by a preponderance of the evidence that he/she was personally aggrieved by the alleged search and seizure because it invaded his/her subjective expectation of privacy which society is prepared to recognize as reasonable." *United States v. Carr*, 939 F.2d 1442, 1444 (10th Cir. 1991).

For automobile searches, Defendant bears the burden of showing a "legitimate possessory interest in or [a] lawful control over the car." *United States v. Valdez Hocker*, 333 F.3d 1206, 1209 (10th Cir. 2003) (internal quotation marks omitted; alteration in original).  Significantly, an individual who is the vehicle's driver but not the registered owner "plainly ha[s] a reasonable expectation of privacy in the vehicle and standing to challenge the search of the vehicle" if the driver establishes "that he gained possession from the owner or someone with authority to grant possession." *Valdez Hocker*, 333 F.3d at 1209 (internal quotation marks and citation omitted).  "[H]owever, a defendant need not submit legal documentation showing a chain of lawful custody

from the registered owner to himself." *Id*. Instead, the Tenth Circuit has "held the following criteria 'important[ ] though not determinative': '(1) whether the defendant asserted ownership over the items seized from the vehicle; (2) whether the defendant testified to his expectation of privacy at the suppression hearing; and (3) whether the defendant presented any testimony at the suppression hearing that he had a legitimate possessory interest in the vehicle." *Parada*, 577 F.3d at 1275 (quoting *Allen*, 235 F.3d at 489).

Critically, "[w]here the proponent of a motion to suppress is the car's driver but not the registered owner, mere possession of the car and its keys does not suffice to establish a legitimate possessory interest." *Valdez Hocker*, 333 F.3d at 1209. "Rather, at a minimum, the proponent bears the burden of establishing 'that he gained possession from the owner or someone with authority to grant possession.'" *Id.* (quoting *Arango*, 912 F.2d at 445).

Here, Defendant did not present any testimony or other evidence regarding how he came into possession of the white truck or his relationship, if any, to the registered owner. Indeed, defense counsel specifically elicited testimony from Officer McCarson on cross-examination that the officer had no information about how Defendant came into possession of the vehicle, whether the vehicle was loaned to Defendant, whether Defendant had a relationship with the registered owner, or whether Defendant was in the process of taking over payments for the vehicle.[4] *See* Mot. Hr'g Tr. at 32:18-33:4. Under binding precedent, Defendant cannot establish standing by arguing that he was found in possession of the vehicle and that there is an absence of evidence that the vehicle was stolen. Nor is it sufficient to imply he may have had a connection to the registered owner by suggesting that a husband may drive a wife's vehicle or that theoretically, one person can take over another person's vehicle loan payments. The Tenth Circuit has made clear that "[a]

---

[4] Officer McCarson testified that the registration for the vehicle indicated the vehicle was being financed by a credit union and the future owner's name was Nectali Fuentes Camarillo. *See* Mot. Hr'g Tr. at 32:8-14.

defendant does not have standing to contest a search where he does not establish a link between himself and the registered owner." *United States v. Eckhart*, 569 F.3d 1263, 1275 (10th Cir. 2009). Defendant has not met his burden. Therefore, Defendant does not have standing to assert an objection to the impoundment and inventory search. As a result, the Court denies Defendant's motion to suppress for lack of standing.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Amended Motion to Suppress Evidence Obtained After an Illegal Impounding, Inventory and Search of Mr. Mixtega-Villegas Vehicle (Doc. 32).

**IT IS SO ORDERED.**

_____
DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE